Syllabus.

𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

TROTTER V. E. I. DUPONT DE NEMOURS AND COMPANY.

March 13, 1919.

1. DECLARATION—*Amended Declaration—Whether Admissions in Former Declaration Binding.*—Plaintiff filed a declaration to which defendant demurred. Before the demurrer was passed upon, plaintiff filed an amended declaration to which defendant also demurred. Before this demurrer was passed upon, plaintiff filed a second amended declaration. There was a demurrer to this second amended declaration which was overruled. The third declaration was intended as a substitute for the other two, and the case was tried upon the third declaration. Under such circumstances, the case stood as though the first and second declarations had not been filed so far as it related to the mere statement of facts, and did not affect the question of making a new case or the statute of limitations, and plaintiff was not bound by the allegations as to how the accident happened contained in the first two declarations.

2. DEMURRER TO THE EVIDENCE—*Appeal and Error.*—Upon a demurrer to the plaintiff's evidence, no question about conflict of evidence arises, but the appellate court can only consider whether or not it would set aside a verdict in favor of the plaintiff, as without evidence to support it, if it had been found by the jury, and, in so considering the truth of the plaintiff's evidence and all inferences therefrom favorable to the plaintiff, which the jury might have fairly drawn therefrom, is admitted. If such a verdict would not have been set aside, the demurrer to the evidence should have been overruled.

3. MASTER AND SERVANT—*Injuries to Servant—Defective Scaffold.*—Plaintiff, the servant of defendant corporation, was injured by the collapse of a scaffold erected by defendant and upon which plaintiff was set to work by defendant. There was evidence that the scaffold was built of old materials, that the scaffold was "absolutely an inadequately built scaffold" and that "any ordinary man would have broken it under almost any circumstances," and other evidence of negligence in the erection of the scaffold.

*Held:* That if upon the evidence the jury had found that the de-

fendant was negligent in the construction of the scaffold, it could not have been said that their finding was without evidence to support it.

4. MASTER AND SERVANT—*Safe Place to Work—Safe Tools and Utensils.*—It is one of the non-assignable duties of the master to use due care to furnish the servant a reasonably safe place in which to work, and reasonably safe tools and utensils with which to work, and if he fails to do so he is liable to the servant for injuries proximately resulting to such servant from such failure.

5. MASTER AND SERVANT—*Proximate Cause—Injury to Servant from a Fall From a Scaffold.*—In the instant case, it appeared that the weakness of the scaffold consisted in its inability to withstand vibration. Plaintiff who was at work erecting and placing conduits and conduitlets for the transmission of electricity, lost his balance when a conduilet broke—an exceedingly unusual occurrence—staggered, reached out and took hold of a timber supporting the scaffold and the scaffold collapsed and plaintiff was thrown and received the injuries of which he complains.

*Held:* That the taking hold of the piece of timber in this manner and under these circumstances did not supersede the negligence of the defendant in constructing the scaffold, and such negligence was the proximate cause of the injury complained of.

6. MASTER AND SERVANT—*Assumption of Risk—Case at Bar.*—In the instant case the plaintiff was under no obligation to inspect the scaffold upon which he had been directed to work by defendant. He had the right to assume, when put to work on the scaffold, that it was in a reasonably safe condition, and in order to charge him with knowledge of the defect on account of its obvious character, the defect and the danger therefrom must have been so unquestionably plain and clear that if he did not see it, he must necessarily have been at fault. This could not be said of plaintiff. The scaffold was ninety feet long and at the end where plaintiff went upon it, nearly ninety feet from the weak spot in the scaffold which gave away and caused the injury, the scaffold was safely constructed; therefore, the risk was not assumed by plaintiff.

Error to a judgment of the Circuit Court of Prince George county, in an action of trespass on the case. Judgment for defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

86

*Lassiter & Drewry,* for the plaintiff in error.

*Plumber & Bohannan,* for the defendant in error.

BURKS, J., delivered the opinion of the court.

This action was brought by Trotter against the defendant to recover damages for injuries received by him by the fall of a scaffold, erected by the defendant, and which the plaintiff was using in the course of his employment as the servant of the defendant at the time the injury was inflicted. The defendant offered no evidence, but at the conclusion of the plaintiff's evidence demurred thereto. The trial court sustained the demurrer and entered judgment for the defendant, and to that judgment this writ of error was awarded.

On the oral argument in this court, counsel for the defendant abandoned the defense of the contributory negligence of the plaintiff, and relied upon the defenses (1) that the defendant was not guilty of any actionable negligence, (2) that if it was negligent at all, its negligence was not the proximate cause of the injury complained of, and (3) that the plaintiff assumed the risk of the danger resulting in his injury.

[1] Before discussing these defenses, we will notice briefly the pleadings which have been made the subject of some discussion by counsel. The plaintiff filed a declaration containing three counts, to which the defendant demurred. Before the demurrer was passed upon, the plaintiff filed an amended declaration of three counts to which the defendant also demurred. Before this demurrer was passed upon, the plaintiff filed a second amended declaration of three counts, to which the defendant also demurred. The trial court overruled the last mentioned demurrer and the trial proceeded. The statement in the brief of counsel for the defendant in error is this: "The second amended

declaration, that upon which the case was tried, differs from the first two declarations in that it omits certain allegations with reference to how the accident happened, which are found in the original and first amended declaration, and upon which allegations we submit the plaintiff in this case is bound. * * * These averments are omitted in the third declaration, but as they are not stated differently it is contended that the plaintiff is bound by the averments which he makes in the first and second declarations." The contention cannot be sustained. The omission was doubtless made because counsel for the plaintiff foresaw that they could not be sustained by the evidence and they did not wish to be hampered by their allegation. An examination and comparison of the declarations will show that the third declaration was intended as a substitute for the other two, and it is admitted by counsel for the defendant that the case was tried upon the third declaration. Under such circumstances the case stood as though the first and second declarations had not been filed, so far as it related to the mere statement of facts, and did not affect the question of making a new case or the statute of limitations. 31 Cyc. 465, and cases cited; *United States* v. *Gentry,* 119 Fed. 70, 55 C. C. A. 658. In *Woodworth* v. *Thompson,* 44 Neb. 311, 62 N. W. 450, it is said: "The original pleading being considered as abandoned, the adverse party cannot read it to the jury, or comment on it in his argument, unless he first offers it in evidence."

[2] As the defendant demurred to the plaintiff's evidence, no question about conflict of evidence arises, but we are only to consider whether or not we would set aside a verdict in favor of the plaintiff, as without evidence to support it, if one had been found by the jury, and, in so considering, we must admit the truth of the plaintiff's evidence and all inferences therefrom favorable to the plaintiff which the jury might have fairly draw therefrom. If such

a verdict would not have been set aside, the demurrer to the evidence should have been overruled.

[3] Considering the case from this standpoint, the jury might have found that the plaintiff was employed by the defendant to do light electrical construction work in August, 1915; that prior to that time he had seven years' experience in that class of work; that from the time of his employment till the time of his injury he had done conduit work, similar to that in which he was engaged at the time of his injury; that he was familiar with the construction of scaffolds and was not "scaffold scared;" that on April 18, 1916, the plaintiff was set to work by the defendant in erecting and placing conduits and conduitlets for the transmission of electric lights on one of the defendant's buildings then under construction; that these conduits and conduitlets were to be placed about twenty-two feet from the ground; that, in order to enable the plaintiff to do this work, the defendant had previously constructed a scaffold for the use of the plaintiff; that the scaffold, at the point where the injury was inflicted, was composed of an upright "ripping" about one inch thick and three or four inches wide, to which was nailed, with eight-penny nails, a piece of timber 2x4 inches thick and about three feet long, the other end being fastened to a beam 6x8 inches, running across the building, and upon this 2x4 piece of timber there was laid for a floor a single piece of timber two inches thick and about ten or twelve inches wide; that the upright ripping extended three feet above the floor of the scaffold; that this scaffold was about ninety feet long and twelve feet above the concrete pavement below; that the place at which the plaintiff was injured was at the far end of the scaffold near the end of the building; that at the other end of the scaffold the outside supports were timbers 2x4 inches instead of plank 1x4 inches, and the floor of the scaffold

consisted of two pieces of timber instead of one, two inches thick and ten or twelve inches wide; that this was a rush job, near the completion of this class of work at defendant's plant, and the scaffold was built of old materials; that the plaintiff observed the scaffold when he went upon it; that he and another man had been on the scaffold at the same time, but not on the same section thereof at one time; that the scaffold was "absolutely an inadequately built scaffold" and "any ordinary man would have broken it under almost any circumstances;" that a 1x4-inch board twelve feet long would not withstand the vibration; that the plaintiff had been working on this job about two hours when he reached the far end of the scaffold described above, and while attempting to insert a conduit in the conduit pipe the conduitlet broke—an exceedingly unusual occurrence—and he staggered, or lost his balance, and reached out and took hold of the 1x4 plank above mentioned, and immediately the scaffold collapsed in consequence of the breaking of said plank about four feet from the ground, and he was thrown down with the scaffold and received the injuries of which he complains.

It was earnestly insisted by the counsel for the defendant in error that the scaffold was strong enough to support two men as long as they were working on it and that it only broke when the plaintiff caught it in falling. The plaintiff, while testifying on this subject, said that two men had been on the scaffold at the same time, but he distinctly states that they both were not on that section at the same time.

If, upon this evidence, the jury had found that the defendant was negligent in the construction of the scaffold, we could not say that their finding was without evidence to support it.

[4, 5]   It is one of the non-assignable duties of the master to use due care to furnish the servant a reasonably safe

place in which to work, and reasonably safe tools and utensils with which to work, and if he fails to do so he is liable to the servant for injuries proximately resulting to such servant from such failure. It is insisted, however, that the defendant is not liable even if the scaffold was negligently constructed, because such negligence, if any such there was, was not the proximate cause of the injury complained of. Many cases, from this and other jurisdictions, have been cited to show what is and what is not a proximate cause. It is always dangerous to attempt to give definitions, and this is especially true of the term "proximate cause," and we shall not attempt it, nor shall we attempt any analysis of the cases on the subject in this and other jurisdictions, preferring that each case shall stand on its own circumstances and be decided on its own merits. There is not so much difficulty in declaring what is a proximate cause in the abstract as there is in applying the principle to the facts of particular cases. We concur in the observations of the Supreme Court of Pennsylvania in *Yoders* v. *Amwell Township,* 172 Penn. 447, 33 Atl. 1017, 51 Am. St. Rep. 750, where it is said: "Speculating on the doctrine of proximate and remote cause in supposed or hypothetical cases seems to have been a sort of intellectual recreation with text-writers on the subject, since the squib case in 2 W. Black, R. 893; with many, the rule laid down in *Hoag* v. *Lake Shore, etc., R. R. Co.,* 85 Pa. 293, 27 Am. Rep. 653, would be criticised as lacking in scientific precision; but approximate certainty in the administration of justice, on evidence in an issue, is all we can hope to attain to. The same rule was, in substance, though in somewhat different language, adopted in many cases before *Hoag* v. *Lake Shore, etc., R. R. Co.,* 85 Pa. 293, 27 Am. Rep. 653. In terse language, without leaving room for theorizing where the evidence is conflicting, and no fault is attributable to the plaintiff, it

brings the jury at once to the ascertainment of the controlling fact: was the consequence such as, under the circumstances, might and ought to have been foreseen and provided against? It eliminates all speculation as to the cause of the cause, which often is merely interesting, and aids not in determining just responsibility. As is said by Strong, J., in *Insurance Co.* v. *Boon*, 95 U. S. 130 [24 L. Ed. 395], the proximate cause is the dominant controlling one, and not those which are mere incidents."

In the case from which we have quoted, a horse was driven in the night-time across a bridge upon which there was no handrail, and was stopped after he had safely crossed the bridge and gotten fourteen feet beyond it. He then took fright and backed over the side of the bridge, causing the injury complained of. The court held that the lack of a proper handrail was the proximate cause of the injury. In arriving at this conclusion, the court announced several propositions which are stated in the headnote to 51 Am. St. Rep., *supra*, as follows:

"Township authorities are bound to know that a bridge may be crossed by a spirited horse in the night-time, and that such horse may take fright; and if, by neglecting to place a guardrail upon such bridge, an injury results from the fright of such horse, their neglect is the proximate cause of the injury, and the township is liable therefor.

"Township authorities are bound to foresee, and reasonably provide against, common danger to ordinary travel on the highway. The fright of a spirited horse, and that his conduct when in fright may be unreasoning, insane and unlooked for, are common dangers which should be expected. Such authorities cannot excuse their negligence in failing to erect a guardrail upon a bridge, or make it the remote cause of an injury, by asserting that they could not foresee a particular freak of conduct in a frightened horse.

"If township authorities neglect to place guardrails upon

a bridge in the highway, and a horse drawing a vehicle passes safely over the bridge, and then, taking fright, backs the vehicle onto and off of the bridge over its side, thereby causing injury to its occupants, such neglect is the proximate cause of the accident, and the township is liable therefor."

In *Standard Oil Co.* v. *Wakefield,* 102 Va. 824, 47 S. E. 830, 66 L. R. A. 792, it was held that "in order to excuse a party guilty of negligence on account of the intervening act of another, the intervening act must be the superseding or responsible cause of the injury. The liability is not averted if the act relied upon is one which might, in the natural or ordinary course, be anticipated, and the defendant's negligence is an essential link in the chain of causation. In such cases defendant's negligence is the efficient and proximate cause of the injury."

There are many cases to the same effect. See monographic note, 36 Am. St. Rep. 807-852. The precise form of the injury need not have been foreseen. It is enough if, after the injury has been inflicted, it can be seen that it was a natural and probable result of the negligent act complained of. "When the act complained of was such that, in view of all the circumstances, it might not improbably cause damage of some kind, the doer of the act cannot shelter himself under the defense that the actual consequence was one which rarely follows from that particular act." 36 Am. St. Rep. 810, and cases cited. We do not understand counsel for the defendant in error to controvert this proposition, but he insists that master cannot be held liable because its negligence, if any, was "merely a condition, as opposed to the efficient cause of the injury," to-wit, the taking hold of the upright piece of timber by the plaintiff under the circumstances hereinbefore detailed. The weakness of the scaffold, as shown by the testimony of the

expert, consisted in its inability to withstand vibration. His testimony on this subject was as follows:

"Then I would say, gentlemen, any responsible man that would erect a scaffold for a man to work on that high from the ground—that it was absolutely an inadequately built scaffold. Now, if he had reversed his timbers and had a 2x4 upright with a 1x4 bracket—that 2x4, in the technical term of building, is called a bracket—that would have held all of the weight, if it wasn't three feet long, that one man or two men would have put on it; but not with the vibration of twelve feet of 1x4 board; it is entirely inadequate; it don't make any difference how it was put up; I would say that any ordinary man would have broken it under almost any circumstances."

The scaffold was built for utility, not to walk on in the most careful and guarded manner; it may have been adequate for the latter purpose. The defendant knew that the work to be performed by the plaintiff was above his head, that he had to use a wrench to unscrew and tighten pipes for the purpose of inserting the conduitlet at the proper places, and that while doing so he had to stand upon this scaffold. It also knew, or was chargeable with knowledge, of the character of work the plaintiff was called upon to perform. The plaintiff describes the work to be done as follows:

"You work conduits anywhere from three-inch pipes down to half-inch, and, in doing this, you have to thread your own pipe, cut it and handle it, and it requires quite a bit of strength to thread a two-and-a-half-inch pipe or a one-inch pipe; in fact, when you go to do it, you have to get up on your die and push down." While the breaking of the conduitlet was a very unusual occurrence and was not to be anticipated, still the work of the plaintiff as described by him would necessarily cause more or less vibration of the scaffold, and it should have been so constructed as to have

withstood any amount of vibration to which it might reasonably have been expected it would have been subjected, and not so that "any ordinary man would have broken it under almost any circumstances." While the plaintiff was using a wrench to put in a conduitlet, the conduitlet broke, and an eye-witness testifies "I saw him lift his hands up, and he staggered a little bit and he brought his hands down and caught hold of the board." Again, he says he "just moved a little bit (indicating a few inches backwards) and put his hand back and caught hold of the piece that was standing there, and it went over—broke." Speaking of the situation of the plaintiff at the time of the accident, the same witness says: "he was not staggering very much; he just staggered very little." The plaintiff himself testifies: "I lost my balance—rather, when the pipe broke, I was standing up like this; when the pipe broke I just caught to that, and the pieces gave away and I went down to the floor." The upright piece which the plaintiff caught hold of did not break at or above the floor of the scaffold, but below the platform between three and six feet from the ground. The evidence does not show that the upright was grasped by the plaintiff with any degree of violence; on the contrary, both witnesses state that he "caught hold" of the piece, not that he grabbed hold of it. The taking hold of the piece of timber in this manner and under these circumstances did not supersede the negligence of the defendant in the manner of constructing the scaffold, for, as said in *Clinchfield Coal Corp.* v. *Ray,* 121 Va. 318, 93 S. E. 601: "it is elementary that a cause, to be a superseding cause, must entirely supersede the operation of the negligence of the defendant; so that such cause alone, without the defendant's negligence contributing in the slightest degree thereto, in fact produced the injury." Under these circumstances, we are of the opinion that the faulty construction of the scaffold was the proximate cause of the plaintiff's injury.

[6]  It is further claimed by the defendant that the plaintiff assumed the risk of the safe condition of the scaffold.  This defense rests upon a rather slim foundation. The plaintiff was under no obligation to inspect the scaffold. He had the right to assume, when put to work on the scaffold that it was in a reasonably safe condition, and if it is sought to charge him with knowledge of the defect on account of its obvious character, the defect and the danger therefrom must have been so unquestionably plain and clear that if he did not see it he must necessarily have been in fault.  *Norfolk & W. R. Co.* v. *Cheatwood,* 103 Va. 356, 49 S. E. 489.  This cannot be said of the plaintiff in this case. This scaffold was ninety feet long and the plaintiff went upon it at the end farthest from where he was injured, and he noticed the construction of the scaffold when he went upon it.  This was nearly ninety feet from the weak spot in the scaffold which gave away and caused his injury. No complaint is made of the method of construction of the scaffold at the point where he entered upon it.  Indeed, it seems to be conceded by the witnesses that, at that point, the scaffold was safely constructed, but, reading the evidence as a whole, it does not appear that the plaintiff either knew or was chargeable with knowledge of the weak construction at the point of the injury.  We are of opinion that the risk was not assumed by the plaintiff.

Upon the whole case, we are of opinion that the trial court erred in sustaining the defendant's demurrer to the plaintiff's evidence, and for this error its judgment must be reversed, and this court, proceeding to enter such judgment as the trial court should have entered, will enter judgment in favor of the plaintiff against the defendant for the sum of $10,000.00, with legal interest thereon from December 11, 1917, the date of the verdict, until payment, and for the costs.

*Reversed.*