COURT OF APPEALS OF VIRGINIA

Present:    Judges Beales, Fulton and Lorish
Argued by videoconference

ANDREA M. MORGAN, ET AL.

                                                    OPINION BY
v.        Record No. 0576-24-2          JUDGE JUNIUS P. FULTON, III
                                                    MARCH 4, 2025
THE BOARD OF SUPERVISORS OF
  HANOVER COUNTY, ET AL.


FROM THE CIRCUIT COURT OF HANOVER COUNTY
J. Overton Harris, Judge

Brian L. Buniva (B.L. Buniva Strategic Advisor, PLLC, on briefs),
for appellants.

Dennis A. Walter, County Attorney (Rebecca B. Randolph, Deputy
County Attorney; Leah D. Han, Senior Assistant County Attorney,
on brief), for appellee The Board of Supervisors of Hanover
County.

Robert W. Loftin (Eugene E. Mathews; Christopher E. Trible;
McGuire Woods, LLP, on brief), for appellee Wegmans Food
Markets, Inc.

Amici Curiae: The Brown Grove Preservation Group, The
Coalition for Hanover's Future, The Virginia Poverty Law Center,
The Southern Environmental Law Center, Virginia Interfaith
Power & Light, The Sierra Club, Waterkeepers Chesapeake, and
Potomac Riverkeeper Network (Steven Fischbach; Morgan Butler;
Christina Libre; Virginia Poverty Law Center; Southern
Environmental Law Center, on brief), for appellants.

Amici Curiae: Virginia Economic Developers Association,
Virginia Municipal League, Virginia Association of Counties,
Virginia Chamber of Commerce, Richmond Chamber of
Commerce, The Hampton Roads Chamber of Commerce, Virginia
Agribusiness Council, Home Builders Association of Virginia,
Virginia Association for Commercial Real Estate, Hampton Roads
Association for Commercial Real Estate, and Associated General
Contractors of Virginia (Charles E. James, Jr.; Brendan D.
O'Toole; Williams Mullen, on brief), for appellees.

This appeal is the latest in a long-running dispute over a proposed Wegmans Food Markets, Inc., distribution center in Hanover County.[1] The Supreme Court reversed and remanded a 2021 ruling of the trial court that sustained demurrers and dismissed the appellants' amended complaint with prejudice. *Morgan v. Bd. of Supervisors*, 302 Va. 46, 69 (2023) (*Morgan I*).

Following *Morgan I*, the appellants filed a second amended complaint to which Wegmans and the Board (collectively "Defendants") once again demurred. The appellants objected to the trial court allowing additional demurrers arguing that *Morgan I* foreclosed any responsive pleadings other than an answer. By order of March 20, 2024, the trial court sustained the demurrers as to four counts and dismissed those claims with prejudice. The trial court's order overruled the demurrers as to the remaining counts but entered a voluntary nonsuit of those claims and dismissed the remaining claims without prejudice. This appeal follows.

BACKGROUND[2]

I. The COVID-19 Pandemic

After its sudden appearance in 2019, the COVID-19 pandemic rapidly developed into a global disruption by March 2020, intruding into every facet of life. On March 13, 2020, Hanover County declared a state of local emergency due to COVID-19. On March 23, 2020, Governor Northam signed Executive Order 53 which limited public gatherings to fewer than ten people and prohibited the operation of schools and non-essential businesses, but explicitly exempted the

---

[1] During the pendency of this ongoing litigation, construction of Wegmans' Virginia Service Center on the site at issue was completed and the Center has been in operation since mid-2023.

[2] We recite the factual allegations in this case as if they are true, because a demurrer admits the truth of all properly pleaded material facts. A demurrer, however, does not admit the correctness of the pleader's conclusions of law. *Ward's Equip., Inc. v. New Holland N. Am., Inc.*, 254 Va. 379, 382 (1997). Moreover, we consider, as did the trial court, not only the substantive allegations of the claim but also the documents stipulated by the parties to be a part of the record subsequent to the motion craving oyer for the purposes of ruling on the demurrer. *See Flippo v. F & L Land Co.*, 241 Va. 15, 17 (1991).

"operation of government." On March 30, 2020, Governor Northam signed Executive Order 55 in furtherance of Executive Order 53, which extended the limitation on public gatherings until June 10, 2020, but continued to explicitly exempt the operation of government.

In light of the unprecedented ongoing public health crisis and in the interest of continuing the operation of government as exempted by Executive Orders 53 and 55, on March 25, 2020, the Hanover County Board of Supervisors ("the Board") adopted Hanover County, Va. Ordinance 20-06 (Mar. 25, 2020)[3] on emergency procedures for continuity of government in light of COVID-19, including to "restrict public access to county owned buildings in the least restrictive manner as reasonably necessary to ensure the health, safety, and welfare of the public and county staff" and "provide notice and hearing requirements for public hearings on all matters requiring statutory notice and hearing including zoning and other land use matters when a quorum of the public body (here, the Board) can be assembled in a single location." Additionally, the Board modified its meeting protocol, and these modified procedures were made publicly available on the Board's website.

## II.  The Contested Development and *Morgan I*

Appellants ("Homeowners") are a group of homeowners in Hanover County who live near what is now the Wegmans' Virginia Service Center ("VSC"). In 1995, Air Park Associates, LLC ("APA"), Wegmans' predecessor in interest, submitted proffers to the Hanover County Board of Supervisors to reclassify its (then undeveloped) property to allow for the construction and operation of a distribution center. The proffers were accepted but not acted upon until 2019. In 2019, following APA's conveyance of the still undeveloped property to Wegmans, the Board and Wegmans entered into a performance agreement for the construction and operation of the

---

[3] We note that as an uncodified ordinance intended to address only the COVID-19 emergency in 2020, Hanover County, Va. Ordinance 20-06 (Mar. 25, 2020) is cited differently than those other ordinances that are codified within the Hanover County Code.

VSC. On February 20, 2020, the Hanover County Planning Commission unanimously approved APA's amendments to their 1995 proffers.

On March 20, 2020, APA submitted a document to the Board titled "Wegmans Virginia Distribution Center Conceptual Plan." And on April 1, 2020, APA submitted revised proffers to incorporate changes recommended by the Planning Commission, which included requiring fences for noise reduction, limiting light pole heights, increasing buffers, and prohibiting the use of tandem trailers. On May 2, 2020, pursuant to Hanover County, Va. Ordinance 20-06 (Mar. 25, 2020), the Board posted the procedure for public attendance and comment during the public zoning meeting on May 6, 2020, on its website. In the posted notice:

> [M]embers of the public were informed that those wishing to make their opinions known to the Board were strongly encouraged to do so by a provided email address and a provided voicemail telephone number and that while registration slots for members of the public to speak in person to the Board at the meeting in opposition to the applications were full, registration slots for members of the public to speak in person to the Board at the meeting in favor of the applications remained available. Members of the public were informed that "Hanover County staff would not be responsible for selecting or determining which individuals can remain but will be enforcing the 10 person rule."

In the hours leading up to the Board's meeting on May 6, 2020, APA submitted 20 amended proffers for the Board's consideration and acceptance at the public hearing scheduled for later the same day. Changes included restrictions on types of buildings, signage, lighting specifications, storage requirements, screening standards, and size limits to reduce traffic.

On the evening of May 6, 2020, the zoning meeting was held in-person. Members of the public and the media were present in the boardroom during the meeting while other members of the public were outside the boardroom, receiving video and audio live streaming of the meeting.[4]

---

[4] One member of the Board, Angela Kelly-Wiecek, even requested that the other members of the Board and anyone else in the boardroom whose cell phones were connected to the Wi-Fi disconnect or put their cell phones on airplane mode because "the Wi-Fi in the parking

The Board did not select or determine which members of the public, including the Homeowners, could enter the boardroom or remain during the public hearing; and representatives of Wegmans and members of the public present in the boardroom even left at various times to allow members of the public outside the boardroom who wished to be present to enter. Some members of the public spoke in person and others submitted comments by email or voicemail which were read to the Board in support of or in opposition to the application. Homeowners' attorney, who has represented them throughout this litigation, was present in the boardroom observing throughout the meeting and even spoke to the Board in person on their behalf in opposition to the applications to amend the 1995 proffers. Two of the Homeowners, Roderick A. Morgan and Kathy Woodcock, were present in the boardroom observing throughout the meeting and spoke to the Board in person, and another Homeowner, Sara Blose, was not present but submitted an email comment which was read to the Board during the meeting. As evidenced in the video from the meeting in the record, several precautions were taken to both avoid the spread of COVID-19 and to allow the public to freely participate in the May 6, 2020 meeting including wiping down the microphone between each in-person speaker; taping off the rows around the microphone to prevent people from sitting in them; and taping a line on the floor for upcoming speakers to stand behind for social distancing purposes. After the public comment period, the Board considered the 1995 proffers and 2020 proffers, as well as the differences between the two, and accepted the 2020 proffers, voting to approve Wegmans' rezoning request.

Homeowners filed their initial complaint against the Defendants on June 5, 2020, seeking declaratory judgment and injunctive relief. They claimed that the Board violated Virginia law when it approved Wegmans' rezoning request, arguing that the development and operation of the

lot [was] reaching capacity" and those members of the public who were trying to watch the livestream from the parking lot were having difficulties.

distribution center would adversely impact their rights as it would result in increased traffic, noise, and light and interrupt the quiet enjoyment of their property. On June 29, 2020, and July 7, 2020, the Defendants filed demurrers and motions to dismiss the original complaint, alleging that the Homeowners lacked standing and that some of their claims were speculative and not ripe for adjudication. On November 9, 2020, the trial court granted the demurrers as to each of the complaint's counts, but allowed Homeowners to amend Counts I through V. On December 15, 2020, Homeowners filed their first amended complaint. As to Counts VI, VII, and VIII, the trial court found that the alleged harm was speculative in nature and not ripe for adjudication. On December 15, 2020, the Homeowners filed another amended complaint, alleging additional facts establishing standing. Between January 7, 2021, and January 15, 2021, the Defendants again filed demurrers and motions to dismiss for lack of standing, in addition to a motion craving oyer.

On July 15, 2021, the trial court again granted the demurrers and motions to dismiss as to all counts, dismissing Homeowners' complaint with prejudice. The trial court held that the Homeowners, even with the amended complaint, lacked standing as to each count. On September 1, 2021, Homeowners filed a notice of appeal to the Supreme Court of Virginia.

On February 2, 2023, the Supreme Court of Virginia reversed and remanded the trial court's ruling that Homeowners lacked standing. *Morgan I*, 302 Va. at 58. Addressing the standing issue, the Supreme Court held that "the original and amended complaints in the present case include specific allegations of particularized harm arising out of the Board's 2020 approval of Wegmans' development plan" and that the "allegations of particularized harm made by the homeowners are fairly traceable to the Board's 2020 decision." *Id.* at 61. The Court concluded by stating, "We offer no opinion, however, on any of the merits or demerits of the various claims pleaded by the homeowners or what, if any, judicial relief should be awarded at the conclusion of this case." *Id.*

### III. The Remand Proceedings Following *Morgan I*

Following the Supreme Court's reversal and remand, the Homeowners filed a verified second amended complaint ("VSAC") on July 13, 2023. After a status conference with all parties on July 18, 2023, the trial court determined that the Defendants were entitled to file responsive pleadings of their choosing to the VSAC as permitted under Rule 3:8(a). On August 8, 2023, Wegmans filed a demurrer and motion to dismiss, arguing that each of the Homeowners' counts do not state a cause of action and failed to state a claim upon which relief could be granted and, once again, that they lacked standing to assert the claims alleged. The Defendants also filed a joint motion craving oyer in response to the VSAC, moving the court to accept various documents referenced in the Homeowners' amended complaint. On August 8, 2023, the Homeowners filed a motion for preliminary declaratory and injunctive relief on Count III, asserting that "The Board's meeting of May 6, 2020, violated the [Virginia] Freedom of Information Act ("VFOIA")" and that the zoning approvals granted to Wegmans were void *ab initio*.

On August 9, 2023, the trial court granted the joint motion craving oyer and accepted the listed documents into the record. The Homeowners endorsed the court's order as "SEEN: and endorsed with the understanding that Plaintiffs preserve their objection to the filing of demurrers and the citation to documents not attached to Plaintiffs' pleading" because in *Morgan I*, the Supreme Court noted that "all counts in the complaint claim . . . that Defendant Board of Supervisors violated Virginia law, and thus the documents submitted by the Defendants and made a part of the record of this case are not 'essential to [Plaintiffs'] claim(s)' and should not be considered on demurrer by the Court." On August 25, 2023, Wegmans filed a plea in bar in opposition to Homeowners' motion for declaratory and injunctive relief on Count III.

On September 1, 2023, the trial court held a hearing on the Defendants' demurrers and motions to dismiss and the Homeowners' motion for declaratory judgment on Count III. On February 6, 2024, the trial court issued a letter opinion finding that the Board had not violated VFOIA in holding its meeting and sustaining the demurrers as to Counts I-IV, dismissing them with prejudice. The trial court overruled the demurrers as to Counts V-VIII.

In Count I, the Homeowners argued that the Board's actions were "inconsistent with the laws of the Commonwealth in that it conducted a public, in person gathering of 10 or more individuals in the Board's Meeting Room, and were unlawful, *ultra vires*, and contrary to Virginia law as inconsistent with Executive Orders #53 & # 55 [sic]." The court found that Executive Orders 53 and 55 "expressly exempt the operation of government from any of their limitations or prohibitions" and thus the "allegations of Count I that the Board 'scheduled and conducted a public hearing at which it restricted attendance of and participation by the Plaintiffs . . . are contradicted by the orders themselves.'"

In Count II, the Homeowners alleged that the restrictions imposed on them at the public hearing violated Code § 15.2-2204(A) and deprived them of their constitutional and statutory right to "*meaningfully participate*" and present their views to the Board. (Emphasis added). The court disagreed and found that Hanover County, Va. Ordinance 20-06 (Mar.25, 2020), on emergency procedures to ensure continuity of government, complied with Code § 15.2-2204(A). Further, the Board had publicly posted the procedure by which the public could attend and comment during the hearing on its website; the Board was not responsible for selecting which individuals could attend in-person without violating the ten-person rule; the Homeowners were represented by counsel who was present and addressed the Board during the meeting; some of the Homeowners were present in the boardroom and addressed the Board during the meeting; and, for those who were not present, their comments were read during the meeting. The trial

court, therefore, concluded that the restrictions imposed on public attendance did not deprive the Homeowners of their rights to meaningfully participate under Code § 15.2-2204(A).

In Count III, Homeowners alleged that because public attendance was severely limited, the hearing by the Board was not open to the public as required by VFOIA. The trial court cited *Suffolk City School Board v. Wahlstrom*, 302 Va. 188, 209 (2023), where the Supreme Court found that the School Board violated VFOIA because it was not "room size, logistics, or COVID precautions that prevented Wahlstrom from attending the meeting in person in the meeting room; it was the fact that, prior to the meeting, the [School] Board decided to deny the public free entry to the meeting room." The trial court noted that under Hanover County, Va. Ordinance 20-06 (Mar. 25, 2020), the Board had publicly posted a way for the public to comment, the public and news media were allowed in the room during the zoning meeting, and the Board was not responsible for determining who was allowed in the room. The trial court further found that the stipulated exhibits made a part of the pleadings contradicted the allegations of Count III that public attendance was severely limited and the meeting was not open to the public in violation with VFOIA.

In Count IV, the Homeowners alleged that the Board violated Hanover County Code §§ 26-307(c) and 26-308(3) when they accepted the amended proffers from Wegmans as they were not submitted for public review 21 days prior to the hearing. The trial court found, however, that the differences in these amended proffers were "more restrictive" than the proffers previously submitted and were of the "proper type and character to be considered by the Board" as set forth in Hanover County Code § 26-307(c). Thus, the trial court concluded that the Board's acceptance of the proffers did not adversely impact the rights of the Homeowners by preventing them from commenting on the amended proffers.

The court also overruled the Homeowners' objection to the court's consideration of exhibits 11-26 entered into the record pursuant to the Defendants' joint motion craving oyer and the video recording of the Board's May 6, 2020 meeting.

On March 4, 2024, the Homeowners moved to nonsuit Counts V-VIII of the VSAC. On March 20, 2024, the trial court granted the nonsuit. Homeowners now appeal.

ANALYSIS

Homeowners allege that the trial court erred when it: 1) denied their motion for declaratory and injunctive relief on Count III of the VSAC and their request for relief pursuant to Code § 2.2-3713, including an award of attorney fees (the VFOIA motion); 2) granted the Board of Supervisors' and Wegmans Food Markets, Inc.'s demurrers to the VSAC and dismissed with prejudice Counts I, II, III, and IV of the VSAC as discussed in the trial court's February 6, 2024 letter opinion, incorporated in its final decree entered on March 20, 2024; 3) ruled that Defendant Board and Defendant Wegmans could demur to the VSAC on the same grounds previously raised in their demurrers to the initial complaint and the first amended complaint, (which alleged the same eight causes of action as pled in the VSAC) and which the Supreme Court of Virginia in *Morgan I* determined were valid causes of action when it reversed and remanded this case to the trial court for further proceedings consistent with the Supreme Court's opinion because no additional demurrers should be allowed under such circumstances, the only defensive pleading authorized for the Defendants to file was an answer to the VSAC; and 4) ruled that the Board and Wegmans could refer to exhibits other than exhibits attached to the VSAC, in their demurrers and the trial court erred when it considered said exhibits in dismissing with prejudice Counts I-IV of the VSAC.

## I. Defendants' Demurrers

We review a trial court's decisions regarding the filing of responsive pleadings such as the demurrers at issue here under an abuse of discretion standard. *See generally Specialty Hosps. of Wash., LLC v. Rappahannock Goodwill Indus.*, 283 Va. 348 (2012). Further, the decision to permit a party to amend a pleading is within the discretion of the trial court and is reviewable only for an abuse of discretion. *Thompson v. Thompson*, 6 Va. App. 277, 281 (1988). However, "[t]his Court performs de novo review of a trial court's sustaining of a demurrer." *Brown v. Jacobs*, 289 Va. 209, 214-15 (2015). Moreover, issues related to the interpretation of statutes and ordinances also are questions of law subject to de novo review. *See, e.g.*, *Cole v. Smyth Cnty. Bd. of Supervisors*, 298 Va. 625, 635-36 (2020); *Alexandria City Council v. Mirant Potomac River, LLC*, 273 Va. 448, 455 (2007).

### A. The Trial Court's Allowance of Defendants' Demurrers

Homeowners argue on appeal to this Court that the Supreme Court's reversal and remand of the trial court's decision in *Morgan I* effectively overruled the demurrers of the Defendants to the eight causes of action originally pled by the Homeowners. However, the Supreme Court was *explicit* in its opinion that it was only addressing the issue of standing, stating, "[w]e offer no opinion, however, on any of the merits or demerits of the various claims pleaded by the homeowners or what, if any, judicial relief should be awarded at the conclusion of this case." *Morgan I*, 302 Va. at 69. Further, Homeowners lose sight of the fact that their filing of the VSAC invited the very responsive pleading they now lament.

On remand, in response to the VSAC filed by Homeowners, the Board filed its demurrers on the grounds that the facts as set forth by the Homeowners failed to establish that the Board failed to comply with the provisions of executive orders, ordinances, and various Code provisions by holding the May 6, 2020 meeting. Wegmans filed its demurrers on the grounds

that the Homeowners did not "state a cause of action and fail to state a claim upon which relief can be granted," and highlighted that the facts as stated in the VSAC failed to demonstrate any failings by the Defendants. These grounds for demurrer are based on the merits of the Homeowners' claims as asserted anew in the VSAC, as opposed to the standing of the Homeowners to bring those claims as addressed by the Supreme Court in *Morgan I*.

Previously, the demurrers at issue before the Supreme Court in *Morgan I* were sustained by the trial court based on standing and ripeness. *See Morgan I*, 302 Va. at 57. Additionally, as noted above, the demurrers at issue before the Supreme Court in *Morgan I* were filed in response to Homeowners' initial complaint and first amended complaint. On remand from the Supreme Court, Homeowners filed the VSAC. The Supreme Court has consistently held that:

> [W]hen an amended motion for judgment, or amended count thereof, is filed and a comparison of the original and amended pleading shows that the amended motion for judgment, or amended count, was intended as a substitute for the original, the case stands as though the original had never been filed.

*Breeding by Breeding v. Hensley*, 258 Va. 207, 212 (1999) (citing *Trotter v. E.I. Dupont de Nemours and Co.*, 124 Va. 680, 682-83 (1919)). Because Homeowners opted to file their VSAC on remand from the Supreme Court, the VSAC "stands in the shoes" of both their initial complaint and first amended complaint, effectively rendering them nullities. Therefore, the Defendants were not precluded from filing the demurrers at issue here nor did the trial court abuse its discretion in allowing them to be filed.

B. The Trial Court's Sustaining of Defendants' Demurrers to Counts I-IV

Finding that the trial court did not abuse its discretion in allowing the Defendants to file additional demurrers to the Homeowners' VSAC, we turn now to the trial court's decision to sustain the demurrers as to Counts I through IV of the VSAC.

## 1. Count I[5]

In Count I of the VSAC, Homeowners allege that the Board violated Executive Orders 53 and 55 ("EO 53" and "EO 55") in conducting the May 6, 2020 meeting because its actions were inconsistent with the laws of the Commonwealth by conducting a public, in-person gathering of more than ten individuals in the Board's Meeting Room. Further,

> the Board's insistence on conducting the public hearing during the global Covid-19 pandemic . . . on a non-emergency matter . . . forced [Homeowners] to make a choice to either comply with the Governor's 'Stay at Home' Executive Order . . . or to risk their health and that of others . . . and attend the May 6th Board meeting.

EO 53 specifically prohibited "all public and private in person gatherings of 10 or more individuals until April 23, 2020." EO 55 then extended EO 53 to June 10, 2020, and additionally ordered "all individuals to remain at their place of residence" but allowed people to leave their homes to "[s]eek medical attention, essential social services, governmental services, assistance from law enforcement, or emergency services." While Homeowners argue that the Board violated these orders by holding the May 6, 2020 public zoning meeting, both EO 53 and EO 55 stated that "[n]othing in the Order shall limit . . . the operation of government." In sustaining the Defendants' demurrers as to Count I, the trial court opined that the executive orders "expressly exempt the operation of government from any of their limitations or prohibitions."

Though neither EO 53 nor EO 55 define what constitutes an "operation of government," the trial court found that Homeowners' allegation that the Board's scheduling and conducting of "a public hearing . . . and [adoption] by a 4-3 vote REZ 2019-00037, as amended, and SE2020-00005" violated EO 53 and EO 55 were "contradicted by the orders themselves." The conducting of a public re-zoning hearing such as the one at issue here is within the power of the

---

[5] We assume without deciding that executive orders can be enforced through a private cause of action such as this.

- 13 -

Board as the policy-determining body of the county. *See generally* Code § 15.2-403; *Bd. of Supervisors v. Southland Corp.*, 224 Va. 514, 521 (1982) ("The power to regulate the use of land by zoning laws is a legislative power, residing in the state . . . . [T]his power may be delegated to the political subdivisions of the state."). Further, judicial review of legislative acts such as we have here must be approached with particular circumspection and courts will not inquire into the motives of the legislative bodies elected by the people. *Ames v. Painter*, 239 Va. 343, 349 (1990) (citing *Tel. Co. v. Newport News*, 196 Va. 627, 639 (1955)). "When we are called upon to review the acts of . . . boards exercising delegated legislative power the inquiry must ordinarily be whether the . . . board has acted arbitrarily or capriciously." *Id.* Despite the unprecedented circumstances presented by the COVID-19 pandemic in 2020, the Board's choice to schedule and conduct the meeting on May 6, 2020, did not violate EO 53 or EO 55 because the public hearing fell within the "operation of government" exception listed in both orders. Additionally, as shown in the video of the May 6 hearing, the Board took extraordinary care to ensure the safety of those present in the meeting room with social distancing and masking in place as well as taking the time to wipe down the microphone used by members of the public between each speaker. Because of the principles of deference courts give to legislative actions, even at the local legislative level, and the Board's clear adherence to both their authority as specifically exempted in EO 53 and EO 55 as well as their modified meeting procedures to protect public health and ensure the continued operation of government, the trial court correctly sustained the Defendants' demurrer and dismissed Count I of Homeowners' VSAC.

### 2. Count II

Count II of Homeowners' VSAC contends that "[t]he Board Deprived [Homeowners] [of] Their Right to Meaningful[ly] Participate in the Public Hearing on May 6, 2020," in violation of Code § 15.2-2204(A), that public notice was inadequate, and that the "restrictions

- 14 -

imposed upon [Homeowners] at the May 6th public hearing . . . deprived some [Homeowners] of their constitutional and statutory right to *meaningfully participate* and present their views to the Board." (Emphasis added). Code § 15.2-2204(A) states in relevant part:

> The local planning commission shall not recommend nor the governing body adopt any plan, ordinance or amendment thereof until notice of intention to do so has been published twice in some newspaper published or having general circulation in the locality, with the first notice appearing no more than 28 days before and the second notice appearing no less than seven days before the date of the meeting referenced in the notice . . . [t]he notice shall specify the time and place of hearing at which persons affected may appear and present their views.

As the trial court noted in its letter opinion, "[o]n April 16, 22 and 29, 2020, the May 6, 2020, meeting on the applications was noticed pursuant to Va. Code § 15.2-2204." Then, on May 2, 2020, the Board posted the procedures for public attendance and comment during the May 6, 2020 meeting, informing members of the public that those wishing to make their opinions known to the Board were strongly encouraged to do so by an email address and a voicemail number provided for that purpose and that registration slots for members of the public to speak in opposition to the applications were full at that time. The Board held the meeting in person on May 6, 2020, with all Board members present in the boardroom in accordance with the procedures posted previously. The Board did not select or determine which members of the public addressed them, which included several of the Homeowners as well as their counsel, who were present in the meeting room.

Code § 15.2-2204(A) does not contain the phrase "meaningful participation." Instead, Code § 15.2-2204(A) is entirely focused on notice and what is required for adequate notice such that "persons affected may appear and present their views." Homeowners have failed to demonstrate or allege a violation of the notice requirement of Code § 15.2-2204(A). Thus, the

trial court correctly sustained the Defendants' demurrer as to Count II of the Homeowners' VSAC.

### 3. Count III

In Count III of their VSAC, Homeowners allege that the Board violated VFOIA when it held the May 6, 2020 meeting because "public attendance was severely limited" meaning that the "Zoning Hearing conducted by the Board was not open to the public including some of the [Homeowners] in the manner required by VFOIA." Specifically, Homeowners contend that the May 6, 2020 meeting violated Code § 2.2-3700(B) which states that "[u]nless a public body or its officers or employees specifically elect to exercise an exemption provided by this chapter or any other statute, every meeting shall be open to the public."

On appeal, Homeowners rely heavily on *Berry v. Board of Supervisors*, 302 Va. 114 (2023). There, the Supreme Court opined that Board of Supervisors of Fairfax County violated Code § 2.2-3707(B)'s prohibition of meetings "conducted through telephonic, video, electronic or other electronic communication means *where the members are not physically assembled* to discuss or transact public business." *Id.* at 134-35 (emphasis added). The Fairfax Board of Supervisors had chosen to hold a *fully* virtual meeting and subsequently adopted a zoning proposal during that virtual meeting in direct violation of Code § 2.2-3707(B). Here, however, the video of the May 6, 2020 meeting clearly shows that *all* members of the Board were physically assembled to discuss public business along with members of the public who were present to address their concerns to the Board, complying with the requirements of Code § 2.2-3707(B).

In its letter opinion, the trial court instead cites to *Suffolk City School Board v. Wahlstrom*, 302 Va. 188 (2023). There, the Supreme Court articulated that "it was not room size, logistics, or COVID precautions that prevented Wahlstrom from attending the meeting in

- 16 -

person in the meeting room; it was the fact that, prior to the meeting, the Board decided to deny the public free entry to the meeting room. Thus, the Board violated VFOIA." *Id.* at 209. This case is distinguishable from *Wahlstrom* because, while there were restrictions on the number of members of the public in attendance due to COVID-19 precautions, the Board did not select who would or would not be allowed in the meeting room on May 6; "representatives of the applicant and members of the public present in the board room left to allow members of the public outside the board room who wished to do so [to] enter"; those members of the public who had registered to address their concerns to the Board in person were allowed to do so; and any other concerns submitted by email or voicemail were read aloud to the Board. As the Supreme Court opined in *Wahlstrom*, while "[i]n general, VFOIA afford[s] the public an opportunity to attend public, in-person meetings of public bodies by attending in the room in which the meeting is held" public bodies' obligations "in this regard [are] not absolute, but rather [are] subject to a rule of reason." 302 Va. at 208. Given the nature of the COVID-19 pandemic, the Board's restrictions on the *number* of people who could be present in the meeting room at any given time was reasonable under VFOIA's open meeting requirements. More notably, the Homeowners were represented by counsel who was present in the boardroom observing throughout the meeting and addressed the Board in person on their behalf in opposition to the applications, and three of the Homeowners themselves addressed their concerns to the Board, two in person and one through a submitted email that was read to the Board. The Board here, unlike the School Board in *Wahlstrom*, took extensive steps to ensure public participation in the May 6 meeting, even extending the meeting until midnight rather than 10:00 p.m. so that all comments could be properly heard. Therefore, the Board did not violate VFOIA in how it conducted the May 6,

2020 meeting and the trial court, after reviewing the evidence submitted by the parties, correctly sustained Defendants' demurrers to Count III of the Homeowners' VSAC.[6]

### 4. Count IV

Count IV of the Homeowners' VSAC alleges that "[t]he Board's Action on Proffered Conditions Submitted on May 6th Prior to the Zoning Hearing Was Contrary to Law and Thus Void" because Hanover County Code § 26-308(2) requires an applicant to submit any revised conceptual plan no later than 21 days prior to the public hearing on the application before the Board. However, Hanover County Code § 26-307(c) states in relevant part that:

> [A]mended proffers may be accepted by the Board after the public hearing has begun only if the amended proffers are *more* restrictive than the proffers previously submitted and serve to increase or enhance the compatibility of the proposed use with existing or planned uses for other properties in the vicinity.

(Emphasis added). Defendants argued before the trial court and on appeal that the amended proffers submitted on May 6, 2020, are of the kind addressed by Hanover County Code § 26-307(c) and, further, that this action was appropriate in light of the Supreme Court's opinion in *Arogas, Inc. v. Frederick County Board of Zoning Appeals*, 280 Va. 221 (2010), that a "Board is not required to hold an additional public hearing each time the Board amends a proffer" because "[o]therwise, the public hearing process may never come to a conclusion." *Id.* at 226-27.

---

[6] In their first assignment of error, Homeowners argue that the trial court erred in denying their motion for declaratory and injunctive relief on Count III of the VSAC pursuant to VFOIA. However, based on our holding that the trial court properly sustained Defendants' demurrer to Count III because the way in which the Board conducted the May 6, 2020 meeting did not violate the open meeting requirements of VFOIA, we need not address the separate VFOIA motion filed by Homeowners.

The amended proffers at issue were:

>1. Conceptual plan–updated to reflect the following changes.

>2. Architectural treatment–Air Park associates agreed to *restrict* use of Butler type buildings.

>3. Monument signage and lighting specifications–Air Park Associates agreed that *no* building sign shall be illuminated.

>4. Restrictions on outside storage–updated to ensure that trucks and trailers may be parked in designated areas as shown in the plan.

>5. Screening and thoroughfare buffer standards and natural areas–Air Park Associates agreed to *increase buffer area* to 50 feet in a specified area.

>6. Traffic–Air Park Associates agreed to *limit* the size of the building to 1,700,000 square feet, thus *reducing traffic generation* significantly below the 1995 restrictions.

(Emphases added).  The types of proffered amendments allowed after the public hearing has begun under Hanover County Code § 26-307(c) include "an increase in the buffer . . . , enhanced onsite or offsite traffic control . . . , enhanced protection from the impact of lighting from the proposed use of other properties in the vicinity, . . . [and] enhanced architectural, or aesthetic design controls."  Here, the amended proffers submitted to the Board on May 6 were more restrictive than the proffers previously submitted as they limited the types of buildings allowed on the proposed site; enhanced lighting protections to neighboring properties; increased the buffer area; and enhanced offsite traffic control by limiting the size of the building.

Thus, the amended proffers submitted to the Board on May 6 in response to concerns raised by the public during the public hearing process were allowed under Hanover County Code § 26-307(c) and the trial court correctly sustained the Defendants' demurrer as to Count IV of the Homeowners' VSAC.

## II. The Additional Evidence

The granting of a motion craving oyer is a question of law that is reviewed de novo. *See Byrne v. City of Alexandria*, 298 Va. 694, 698 (2020). Additionally, as stated in Rule 5A:18, "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling."

> [A] motion craving oyer has been, since the early days of the common law, a remedy afforded to a litigant who has been sued on a claim based upon a written document mentioned in a claimant's pleading but not made a part of the record. The motion should be granted only where the missing document is *essential to the claim*.

*Byrne*, 298 Va. at 700 (emphasis added). Further,

> No intelligent construction of any writing or record can be made unless all essential parts of such paper or record are produced. A litigant has no right to put blinkers on the court and attempt to restrict its vision to only such parts of the record as the litigant thinks tend to support his view. When a court is asked to make a ruling on any paper or record, it is its duty to require the pleader to produce all material parts.

*Id.* at 701 (quoting *Culpeper Nat'l Bank v. Morris*, 168 Va. 379, 382-83 (1937)).

Here, Defendants filed a joint motion craving oyer in response to Homeowners' VSAC requesting that the court accept certain documents and evidence referenced by, but not included in the VSAC. These exhibits include evidence such as the relevant portion of the minutes from the May 6, 2020 public hearing; written comments submitted by interested members of the public to the Board for its public hearing originally scheduled for March 25, 2020; the transcript of voicemails and emails submitted by interested members of the public to the Board of Supervisors for the May 6, 2020 public hearing and more.

On July 18, 2023, the parties were before the trial court to set dates for hearings on several motions that had been filed in the case including the Defendants' joint motion craving oyer. While determining a date to hear arguments on that specific motion, Homeowners' counsel

- 20 -

stated "we know what the motion craving oyer is . . . if what they want to put in is everything that they tried to put in three years ago, *I don't object to it*." (Emphasis added). Because Homeowners' counsel stated on the record that he did not object to the trial court's acceptance of the additional evidence requested in the Defendants' joint motion craving oyer, there is no appealable error before this Court. For this reason, we hold that the Homeowners have waived their challenge to the trial court's acceptance of the additional evidence requested by Defendants.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

*Affirmed.*